UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: FICO ANTITRUST LITIGATION RELATED CASES | ) ) ) ) ) ) | Judge Edmond E. Chang<br><br>Magistrate Judge David E. Weisman |
| This Document Relates to the Following Cases: | ) ) ) | |
| SKY FEDERAL CREDIT UNION, on behalf of itself and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:20-CV-02114 |
| v. | ) ) | |
| FAIR ISAAC CORPORATION, | ) ) | |
| Defendant. | ) ) ) | |
| FIRST CHOICE FEDERAL CREDIT UNION, on behalf of itself and all others Similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:20-CV-02516 |
| v. | ) ) | |
| FAIR ISAAC CORPORATION, | ) ) | |
| Defendant. | ) ) ) | |
| AMALGAMATED BANK, on behalf of itself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 1:20-CV-02533 |
| v. | ) ) | |

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| ALCOA COMMUNITY FEDERAL CREDIT UNION, on behalf of itself and all others similarly situated, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:20-CV-02559 |
| | ) | |
| v. | ) | |
| | ) | |
| FAIR ISAAC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| GETTEN CREDIT COMPANY, individually And on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:20-CV-02651 |
| | ) | |
| v. | ) | |
| | ) | |
| FAIR ISAAC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| KENMORE NY TEACHERS FEDERAL CREDIT UNION, on behalf of itself and all Others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | No. 20-CV-02755 |
| | ) | |
| v. | ) | |
| | ) | |
| FAIR ISAAC CORPORATION, EQUIFAX, INC, EXPERIAN, PLC and TRANSUNION, LLC | ) ) ) | |
| | ) | |
| Defendants. | ) | |

2

| | | |
|---|---|---|
| ALTERNATIVE FINANCE, INC and BROOKFIELD MANAGEMENT COMPANY, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 20-CV-03204 |
| v. | ) ) | |
| FAIR ISAAC CORPORATION, | ) ) ) | |
| Defendant. | ) ) ) | |
| CITY OF BOSTON CREDIT UNION, | ) ) ) | |
| Plaintiff, | ) ) | No. 20-CV-03315 |
| v. | ) ) | |
| FAIR ISAAC CORPORATION, | ) ) ) | |
| Defendant. | ) ) ) ) | |
| HOLMES COUNTY BANK AND TRUST COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 20-CV-03395 |
| v. | ) ) | |
| FAIR ISAAC CORPORATION, | ) ) ) | |
| Defendant. | ) ) ) ) | |
| GARNER PROPERTIES & MANAGEMENT, on behalf of itself and all others similarly situated, | ) ) ) ) ) | |

3

|  |  |  |
|---|---|---|
| Plaintiffs, | ) | No. 20-CV-04575 |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| FAIR ISAAC CORPORATION, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM OPINION AND ORDER**

Ten separate proposed antitrust class actions against Fair Isaac Company (FICO) are pending before this Court: *Sky Federal Credit Union vs. Fair Isaac Corporation*, 20-cv-02114; *First Choice Federal Credit Union vs. Fair Isaac Corporation*, 20-cv-02516; *Amalgamated Bank vs. Fair Isaac Corporation*, 20-cv-02533; *Alcoa Community Federal Union vs. Fair Isaac Corporation*, 20-cv-02559; *Getten Credit Company vs. Fair Isaac Corporation*, 20-cv-02651; *Kenmore NY Teachers Federal Credit Union vs. Fair Isaac Corporation*, 20-cv-02755; *City of Boston Credit Union vs. Fair Isaac Corporation*, 20-cv-03315; *Holmes County Bank and Trust Company vs. Fair Isaac Corporation*, 20-cv-03395; *Garner Properties & Management vs. Fair Isaac Corporation*, 20-cv-04575; and *Alternative Finance, Inc. et al vs. Fair Isaac Corporation*, 20-cv-03204. Having accepted reassignment of these actions, R. 48, the parties have presented various proposals on how best to consolidate the cases under Federal Rule of Civil Procedure 42(a), and whom to appoint as interim class counsel under Rule 23. All ten related actions allege that FICO engaged in monopolistic behavior that caused the Plaintiffs to overpay for FICO credit scores, in violation of the Sherman

4

Act, 15 U.S.C. §§ 1 & 2, and various state laws.[1] But the various Plaintiffs' attorneys wish to proceed on different legal theories of recovery for a subset of Plaintiffs and class members. This has led them to disagree over how the cases should be consolidated. R. 62, Alternative Finance Br.; R. 65, Sky Fed. Br.[2]

For the reasons discussed in this Opinion, the Court grants the motion filed by Sky Federal Credit Union, which has the support of the Plaintiffs in eight of the ten related cases (20-cv-02114, 20-cv-02516, 20-cv-02533, 20-cv-02559, 20-cv-02651, 20-cv-02755, 20-cv-03315, and 20-cv-03395). R. 64, Sky Fed. Mot. The competing motion filed by Alternative Finance and Brookfield Management is denied. R. 61, Alternative Finance Mot. Scott+Scott Attorneys at Law LLP (the firm for Sky Federal Credit Union) is appointed as Interim Class Counsel representing the direct-purchaser plaintiffs as defined by them, with MoloLamken LLP acting as liaison counsel. Cohen Milstein Sellers & Toll PLLC is appointed to represent the indirect-purchaser plaintiffs as defined by Scott+Scott.

## I. Background

All ten related cases allege that FICO overcharged for credit scores. A credit score is a three-digit number that is supposed to convey the creditworthiness of a consumer, based on his or her credit history. R. 1, Compl. ¶ 1. Consumers can buy

---

[1] The Court has subject matter jurisdiction over Sherman Act and Clayton Act claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

[2] Citations to the record are noted as R. __, followed by the docket number, with a page or paragraph number if applicable. Unless otherwise noted, docket citations are to the docket in *Sky Federal Credit Union vs. Fair Isaac Company*, 1:20-cv-02114.

their own credit scores to monitor their own creditworthiness—the market for these scores is called the B2C market, short for business-to-consumer. *Id*. But the cases now before the Court are all concerned with the B2B, or business-to-business market, in which businesses buy consumers' credit scores to assess the risk of extending credit or engaging in transactions with those consumers. *Id.* ¶¶ 1–2.[3] FICO has allegedly maintained a 90% monopoly over the B2B credit-score market for many years. *Id.* ¶ 2. According to most of the Plaintiffs, FICO has had help maintaining its monopoly from the three major credit bureaus: TransUnion, Equifax, and Experian. *Id.* ¶ 5.[4] These credit bureaus allegedly acted as FICO's agents and co-conspirators in negotiating sales of credit scores to businesses in all 50 states, all on terms that favor FICO. *Id.*

There will be time enough later to delve into the details of FICO's allegedly monopolistic behavior and alleged conspiracy with the credit bureaus. For purposes of the consolidation motions, what matters are the different types of Plaintiffs in the ten related cases. Although they are all B2B credit-score purchasers, the details of their interactions with FICO differ in important ways.

The first category of Plaintiffs includes entities like Amalgamated Bank, which says it bought FICO scores directly from FICO as well as from credit bureaus. R. 1,

---

[3]There is no need to review the factual allegations in all ten related cases—the overlap is considerable—but a representative sample will show the different types of claims and theories they present.
[4]*See also* R. 1, 20-cv-02516, Compl. ¶ 5; R. 1, 20-cv-02533, Compl ¶ 5; R. 1, 20-cv-02559, Compl. ¶¶ 3–5; R. 1, 20-cv-2561, Compl. ¶¶ 2, 15; R. 1, 20-cv-2755, Compl. ¶¶ 4, 8; R. 1, 20-cv-03315, Compl. ¶¶ 4–7; R. 1, 20-cv-03395, Compl. ¶¶ 4–7.

20-cv-2533, Compl. ¶ 14. Amalgamated Bank's complaint seeks to represent a class of B2B FICO-score consumers that includes "[a]ll B2B Purchasers residing in the United States that directly purchased a FICO Score from Fair Isaac … = during the Class Period." *Id*. ¶ 86. Sky Federal's Complaint proposes the same class. Compl. ¶ 86. The Court will call this category of Plaintiffs that bought credit scores directly from FICO, "FICO-Direct Purchasers."

The second category of Plaintiffs includes Sky Federal and all other entities that allege that they bought credit scores from FICO through agreements with FICO *and the credit bureaus*. Compl. ¶¶ 14, 55–59. The full definition of Sky Federal's proposed class includes this second category of businesses: "All B2B Purchasers residing in the United States that directly purchased a FICO Score from Fair Isaac *and/or a Credit Bureau* during the Class Period." Comp. ¶ 86 (emphasis added). The Court will call these entities, which bought FICO scores through the credit bureaus, "Credit Bureau Purchasers." Remember that Sky Federal and seven other Plaintiffs allege that the credit bureaus engaged in a conspiracy with FICO that helped maintain FICO's monopoly. *Id*. ¶ 5 (see also, footnote 4).

The third and final group of Plaintiffs includes those that bought FICO scores not from FICO or a credit bureau, but from an intermediary company. This group includes, for example, Brookfield Management Services, a co-plaintiff in *Alternative Finance, Inc. et al v. Fair Isaac Company*, 20-cv-03204. Brookfield Management Services is a property management company that buys FICO scores from a tenant-screening service, which has bought them from the credit bureaus. R. 1, 20-cv-03204,

Compl. ¶ 4. Garner Properties & Management, which filed its own related lawsuit, is a similar business. R. 1, 20-cv-04575, Compl. ¶ 6.[5] Alternative Finance seeks to represent a class "consisting of all end-user business-customers that indirectly purchased a FICO Score in the Business Market for credit scores for use and not for resale from January 1, 2006 through the present in a Repealer Jurisdiction." *Alternative Finance* Compl. at 1. (More later on "repealer jurisdictions.") This would include Brookfield, Garner, and any other company that bought a FICO score from a company that is not FICO or a credit bureau. The Court will call these the Indirect Purchasers.

But Alternative Finance believes its class also encompasses the second category of Plaintiffs described above: those who bought FICO scores from one of the three credit bureaus. R. 62, Alternative Finance Brief in Support of Motion to Consolidate, 1–3. According to Alternative Finance, a credit bureau is a direct purchaser of a FICO score, but anyone who buys a credit score from a credit bureau is an indirect purchaser. *Id.* This, of course, contradicts Sky Federal's claim that FICO and the credit bureaus are acting in a conspiracy.

So Sky Federal's counsel and Alternative Finance's counsel have filed separate motions to consolidate the actions in this case, through which they are vying for the right to represent a presumably dominant share of the proposed classes of plaintiffs:

---

[5]Garner Properties & Management is the only Plaintiff to take no position on the motions to consolidate filed before the Court. R. 62, Alt. Finance Br. at 2 (FN 2). Garner does not intend to apply for the lead counsel position and supports Cohen Milstein as the lead counsel for indirect-purchaser plaintiffs. *Id.*

8

the Credit Bureau Purchasers. Sky Federal's counsel, Scott+Scott, wishes to represent "Direct Purchasers," while Alternative Finance's counsel, Cohen Milstein, wishes to represent "Indirect Purchasers" of credit scores. Each side believes the Credit Bureau Purchasers fall in its domain. Neither seems to object to the other firm taking charge of the undisputed plaintiffs on either end of the spectrum (the Indirect Purchasers for Cohen Milstein, and the FICO-Direct Purchasers for Scott+Scott). The questions now before the Court are: in what configuration should the ten related cases be consolidated, and who should take the lead on representing the Credit Bureau Purchasers?

## II. Standard of Review

### A. Rule 42(a): Consolidation

Federal Rule of Civil Procedure 42(a) grants federal district courts the authority and discretion to consolidate related actions for greater efficiency. The Rule states: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a). Courts should consolidate related actions when possible to promote judicial economy, as long as the consolidation does not unduly prejudice any party. *Ikerd v. Lapworth,* 435 F.2d 197, 204 (7th Cir.1970); *United States v. Knauer*, 149 F.2d 519, 520 (7th Cir. 1945).

### B. Rule 23(g): Class Counsel

In a proposed class action, a federal court may assign interim class counsel even before taking up the motion for class certification. Fed. R. Civ. P. 23(g)(1), (3). In deciding whom to appoint as class counsel, the court must consider the following factors that show counsel's likely competency to handle the case:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The Court can also consider any other factors related to "counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Among these miscellaneous factors, courts have routinely recognized, over the past decade, the value of a legal team that is diverse across axes of gender, race, and other aspects of identity. *See, e.g., City of Providence, Rhode Island v. AbbVie Inc.*, 2020 WL 6049139, at *6 (S.D.N.Y. Oct. 13, 2020).

### III. Analysis

Before examining the consolidation and class-counsel proposals, it makes sense to further explain the significance of categorizing plaintiff classes as indirect or direct purchasers. Plaintiffs who win on violations of federal antitrust laws are entitled to recover treble damages under the Clayton Act. 15 U.S.C. § 15. But the Supreme Court ruled in the canonical *Illinois Brick* case that only *direct purchasers*—

those who purchased goods or services directly from the alleged antitrust-violator at a monopoly price—may recover under federal antitrust law. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977). When a conspiracy is afoot, the first purchaser outside the conspiracy is considered a direct purchaser. *Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 839 (7th Cir. 2020). Indirect purchasers—those who would have to show that the direct purchaser passed on the monopoly pricing to the next purchaser, through every link in the alleged supply chain—are out of luck under this rule. *Illinois Brick*, 431 U.S. at 735.

But the antitrust laws of some states permit indirect purchasers to recover damages, effectively "repealing" *Illinois Brick*'s prohibition for plaintiffs who assert state law claims. The parties to this case call those states "Repealer Jurisdictions." Alternative Finance reports that the Repealer Jurisdictions are Arizona, California, District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. R. 1, 20-cv-3204, Compl. ¶ 91. This leaves over 20 states and territories in which no indirect purchasers can recover any damages for antitrust violations.

In any antitrust case, an indirect purchaser and a direct purchaser are trying to prove different things, which might or might not put them at odds. The direct purchaser needs to show only that it paid the alleged antitrust-violator monopoly prices. Under *Illinois Brick*, a direct purchaser can recover treble damages for violations of

federal antitrust law *regardless* of whether it passed on the monopoly prices to downstream consumers. *Illinois Brick*, 431 U.S. at 746–47. An indirect purchaser bringing claims under state law in a Repealer Jurisdiction, by contrast, *must* show that the monopoly prices were passed on to it to recover any damages. *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 743–44 (7th Cir. 2018). But if an indirect purchaser can do that, an important damages multiplier can be the result: indirect purchasers in Repealer Jurisdictions can recover damages under state law even if direct purchasers also recover damages under the Clayton Act, leading to multiple liability for the defendants. *California v. ARC Am. Corp.*, 490 U.S. 93, 105 (1989) ("Ordinarily, state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law, and no clear purpose of Congress indicates that we should decide otherwise in this case") (cleaned up).[6] Proving passed-on damages is necessary for the indirect purchaser, but unnecessary—though also not inherently harmful—to the direct purchaser.

Categorizing the Credit Bureau Plaintiffs as indirect versus direct purchasers thus has significant consequences for their ability to recover damages through this litigation, as well as for litigation strategy. The Court prefers not to decide at this stage, without thorough adversarial briefing, whether the Credit Bureau Purchasers are indirect or direct purchasers. Scott+Scott, with the support of counsel in eight of

---

[6]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

the ten cases before the Court, proposes to argue that they are direct purchasers. Sky Fed. Br. Even though Cohen Milstein disagrees with this position, they appear to accept that the argument must at least be permitted to proceed to the motion-to-dismiss stage. R. 77, Alternative Finance Reply at 1. The question for the Court is how best to organize the case to proceed efficiently, without prejudice to the parties.

## A. Consolidation

On consideration of the current record and pleadings, the most sensible and efficient path forward is to appoint Scott+Scott as Interim Class Counsel representing the FICO-Direct Purchasers and *exclusively* representing the Credit Bureau Purchasers: this will be the consolidated Direct Purchaser Action. Cohen Milstein is appointed as Interim Class Counsel representing the (undisputed) Indirect Purchasers only. Scott+Scott is prepared to argue that the Credit Bureau Purchasers are direct purchasers by virtue of the alleged conspiracy between FICO and the credit bureaus, and thus entitled to treble damages under the Clayton Act if FICO violated the Sherman Act. Sky Fed. Br. at 5. They have also pleaded claims under various state antitrust and unfair practices statutes. Compl. ¶¶ 148–51. If their Sherman Act claims on behalf of the Credit Bureau Purchasers fail, then they are prepared to argue in the alternative for recovery under state laws. Sky Fed. Br. at 5; R. 73, Sky Fed. Resp. at 7. Cohen Milstein, by contrast, believes that the Credit Bureau Purchasers are indirect purchasers, and thus not entitled to recover treble damages under federal law. Alt. Finance Br. at 2. They would not pursue treble damages under federal law for Credit Bureau Purchasers, which would prejudice those plaintiffs. Again, at this

stage the Court is not saying which law firm is right. But the Credit Bureau Purchasers are entitled to be represented by the more aggressive counsel that will pursue all potentially viable claims on their behalf.

The Court appreciates Cohen Milstein's attempt at a compromise proposal in its reply brief, which suggested that both teams of counsel should proceed as representatives of the Credit Bureau Purchasers, pleading and briefing their theories until one emerges victorious. Alternative Finance Reply at 1. But that would have been inefficient and unwieldy. Cohen Milstein appears to be confident that a motion to dismiss would quickly resolve the issue with the Credit Bureau Purchasers, leaving only one class counsel (in their prediction, Cohen Milstein) representing the Credit Bureau Purchasers. *Id.* at 1–2. But what if Scott+Scott's theory survives a motion to dismiss? That would *not* mean that the alternative arguments under state laws can be abandoned. Many a claim has survived a dismissal motion only to fall at summary judgment or be defeated a trial. Would both teams of attorneys continue to represent the same disputed class of plaintiffs, possibly for years, coordinating discovery and presenting duplicative arguments to the Court? That cannot be the solution to the problem.

The double-Complaint strategy is also unnecessary because Scott+Scott can make the same arguments Cohen Milstein would have made on behalf of the Credit Bureau Purchasers—in the alternative. The Court does not share Cohen Milstein's concern over possible conflicts in that approach. Alternative Finance Reply at 3–4. Attorneys routinely plead in the alternative and zealously argue multiple theories in

14

search of the best possible outcome for their clients. Nor do the possible outcomes from a motion to dismiss generate immediate cause for concern. It is not clear that, if the Credit Bureau Purchasers are found to be indirect purchasers, then this would create a conflict of interest for Scott+Scott with the FICO-Direct purchasers. Cohen Milstein argues that Scott+Scott will be put in an untenable position because "indirect purchasers like Alternative Finance would need to prove the credit bureaus passed FICO's overcharges on, but the undisputed direct purchasers like Amalgamated Bank have no incentive to do so." Alternative Finance Reply at 6. But this is not really a conflict—it just means that the Scott+Scott team would have to make multiple arguments at once, as lawyers often do. It bears repeating that plaintiffs recovering under federal law can recover treble damages *even if* they passed on the monopoly pricing. So, it does not harm the direct-purchaser plaintiffs if *other* plaintiffs show that the pricing was passed on.[7] If Sky Federal's federal claims for the Credit Bureau Purchasers *do* survive a motion to dismiss, then the Court does not see why Scott+Scott must choose between the two competing theories, as Cohen Milstein predicts. Alternative Finance Reply at 9. For all the reasons just discussed, they can simply continue preparing the case with multiple theories, even up through a trial.[8]

---

[7]Also, Scott+Scott is not seeking to represent the credit bureaus (see Compl. ¶ 87); and the Credit Bureau Purchasers are only trying to show that the *credit bureaus* passed on costs, not, as far as the Court knows, that any FICO-Direct plaintiffs or class members passed on any costs.

[8]Meanwhile, there is a potential conflict in Cohen Milstein's proposed class, between undisputed Indirect Purchasers, and the disputed Credit Bureau Purchasers. According to Alternative Finance's own Complaint, Brookfield Management purchased FICO scores from

All of that being said, if it becomes clear later that Scott+Scott cannot effectively represent all the plaintiffs and classes encompassed by the FICO-Direct Purchasers and Credit Bureau Purchasers, the Court can and will address the problem then. Scott+Scott has assembled a team of experienced attorneys from outside its firm to serve as a steering committee for this litigation if necessary. Sky Fed. Br. at 13–14. They have already mapped out possible scenarios, including various subclasses and groups, which might require different appointed counsel. *Id.* at 12–14. They appear to be taking any possible future conflicts with appropriate seriousness.

As for FICO's proposal that all of the Plaintiffs be forced to fall into step behind one interim class counsel and one consolidated complaint, the Court rejects it. R. 74, FICO Br. For the reasons discussed above, it makes sense to separate out the indirect-purchaser plaintiffs from the direct-purchaser plaintiffs in these related actions. The Court notes that this does appear to be standard practice in this District and others, as proffered by all of the moving Plaintiffs. Alternative Finance Br. at 11; Sky Fed. Br. at 5. This belies the notion that it would be a special burden on FICO to face two separate consolidated complaints on behalf of two proposed classes. FICO Br. at 6. To the extent that FICO was simply seeking to avoid a situation where competing

---

agencies that purchased them from the credit bureaus—in other words, from a Credit Bureau Purchaser. R. 1, 20-cv-03204, Compl. ¶ 4. It is true that Cohen Milstein proposes to represent only end-users, not resellers. Alternative Finance Reply at 8. But they also acknowledge that some entities could be end-users for some purchases and resellers for other purchases. *Id.* The Court is not convinced that Cohen Milstein's plan would necessarily have avoided any possible intra-class conflicts.

theories are before the Court in separate Complaints, its wish is granted: that was Cohen Milstein's proposal, and the Court has rejected it.

### B. Class Counsel

The Court agrees that Scott+Scott is qualified to act as Interim Lead Counsel for the direct-purchaser plaintiffs, with MoloLamken serving as Liaison Counsel. Sky Fed. Br. at 9. Both law firms have been involved in this litigation since its early days and have the expertise and experience needed to represent the proposed class. The Court notes Scott+Scott's track record of successful complex antitrust litigation, as well as MoloLamken's sterling reputation and local presence. *Id.* 10–11. The Court also appreciates that counsel has already thought ahead to possible subclasses and is prepared to propose a Plaintiffs' Steering Committee to handle those developments if they become reality; the committee would consist of additional qualified attorneys who could step in to take on more responsibility if necessary. *Id.* 12–14. Although there might be some small loss in efficiency due to involving additional law firms, Scott+Scott and MoloLamken have already demonstrated that they can effectively lead and coordinate with other attorneys, by bringing together counsel from eight of the ten related actions to support their motion for consolidation and appointment of interim class counsel. Finally, the Court agrees that it is in the class's best interest to have a diverse legal team at its disposal, and that Scott+Scott and MoloLamken can provide such a team. *Id.* 14–15.

Cohen Milstein is likewise eminently qualified to represent the indirect purchaser plaintiffs. The firm has a long history of success in class action litigation, including antitrust class actions. Alternative Finance Br. at 14–15.

### IV. Conclusion

For the reasons discussed above, Sky Federal's Motion to Consolidate and for the Appointment of Interim Class Counsel, R. 64, is granted. Alternative Finance's competing motion, R. 61, is denied. Scott+Scott is appointed as Interim Class Counsel representing the Direct Purchaser Plaintiffs, including both the FICO-Direct Purchasers and the Credit Bureau Purchasers, with the understanding that Scott+Scott will continue to pursue alternative theories in case its federal claims for the Credit Bureau Purchasers fail. Scott+Scott is directed to file a consolidated complaint on behalf of all Direct Purchaser Plaintiffs by October 21, 2021. Cohen Milstein is appointed to represent the Indirect Purchasers, including Garner Properties & Management and Brookfield Management Company and others like them. The respective Interim Class Counsel and FICO shall confer and propose an answer or Rule 12 motion schedule. The parties shall file, on the docket in 20-cv-2114, a status report on October 28, 2021. The Court sets a tracking status hearing for November 5, 2021, at

8:30 a.m., but to track the case only (no appearance is required). Instead, the Court will review the status report before that date.

                                            ENTERED:

                                                s/Edmond E. Chang
                                            Honorable Edmond E. Chang
                                            United States District Judge

DATE: September 30, 2021